UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

                                Plaintiff,

v.                                                 Case #15-CR-6157-FPG-MWP

                                                      DECISION & ORDER

ROOSEVELT BROOKS, TERRENCE LEWIS,
and NATHANIEL IRVIN IV,

                                Defendants.
_____

     Before the Court are motions to suppress tangible evidence by the three defendants in this case. ECF Nos. 49, 54, 58, 61. This Court referred all pretrial motions to United States Magistrate Judge Marian W. Payson pursuant to 28 U.S.C. § 636(b). ECF No. 32. Judge Payson has issued a Report and Recommendation on the defendants' motions to suppress, recommending that this Court deny the motions. ECF No. 74. One of the defendants, Roosevelt Brooks, has filed Objections to the Report and Recommendation, (ECF No. 80) and the government has responded to those Objections (ECF No. 83).

## BACKGROUND

     The pending motions to suppress center on a police investigation in October 2015 of activities at 24 Fern Street in Rochester, New York. The investigation ultimately resulted in the discovery of heroin, guns, and ammunition during the execution of a search warrant for 24 Fern Street on October 15, 2015. The three defendants have since been charged with drug-and-gun related crimes, and they now move to suppress that tangible evidence seized during the execution of the warrant.

     The following facts about the investigation are, unless otherwise stated, drawn directly

from the search warrant or application for the search warrant. On October 1, 2015, Officer Nolan Wengert of the Rochester Police Department was surveilling drug activity around two neighboring houses, 14 Fern Street and 24 Fern Street. ECF No. 49-2 at 5. During this surveillance, Wengert observed Terrence Lewis, one of the defendants in this case, walking from the area of 14 Fern Street towards the porch area of 24 Fern Street. *Id.* Lewis was arrested shortly thereafter for possession of marijuana.[1] *Id.* Notably, Wengert also recovered 63 bags of crack cocaine from a dryer vent behind 14 Fern Street (*id.*), which, based on an affidavit filed by one of the defendant's counsel, Wengert saw Lewis depositing in the vent prior to the arrest (ECF No. 49 at ¶ 7).

Wengert's subsequent actions on October 1, 2015 form the basis of Brooks's pending motion to suppress and Objections. Once Lewis was in custody, the defendants assert, and the government appears to acknowledge, that Wengert entered 24 Fern Street without a warrant and without consent of the occupants. ECF Nos. 49 at ¶ 7, 54 at 4, 63 at 7, 65 at 15 & n.2. Inside the house, Wengert observed both a video system that monitored various sides and doors of the house as well as planks of wood barricading the doors. ECF No. 49-2 at 5. Wengert's observations of the video system and door barricades were set forth in the search warrant application and, specifically, were used to justify the application's request for a "no-knock" warrant. *Id.* at 7. Per the application, police requested "no-knock" authorization because the occupants of 24 Fern Street would "utilize [the] surveillance cameras to detect law enforcement personnel" upon a knock on the door and be able to destroy evidence. *Id.*

In the days following October 1, 2015, police made two controlled purchases of heroin from 24 Fern Street using a confidential informant. First, on October 9, 2015, while being

---

[1] The warrant application does not provide further detail about Wengert's pre-arrest observations of Lewis.

monitored by police, the confidential informant approached 24 Fern Street and met a man who asked the informant if he wanted "hard." *Id.* at 6. The informant asked for six bags of heroin and handed the man some money. *Id.* The man then went inside 24 Fern Street and came back out with six bags of heroin. *Id.* At some point during the interaction, the man also brought the informant across the street to an abandoned house and told the informant to, for any future transactions, first ring the abandoned house's doorbell; occupants of 24 Fern Street would then come out to complete the transaction. *Id.*

The second controlled purchase took place on October 13, 2015, and the informant essentially just followed the given instructions about how to make a purchase. *Id.* First, he rang the doorbell at the house across the street from 24 Fern Street. *Id.* A man approached, talked to the informant, and then went inside 24 Fern Street. *Id.* Another man then came out of 24 Fern Street with a bundle in his pants pocket. *Id.* The informant handed over some money in exchange for ten bags of heroin. *Id.*

After the investigation on October 1, 2015 and the controlled purchases on October 9 and October 13, 2015, officers applied for a search warrant on October 14, 2015. *Id.* at 7. Based on the information described above, a state court judge issued a no-knock warrant for 24 Fern Street the same day. ECF No. 49-2.

Per the briefing on the motions to suppress, police executed the search warrant for 24 Fern Street on October 15, 2015. ECF No. 54 at 3. During the search, they recovered heroin, guns, and ammunition on the property. *Id.* All three defendants were at the residence at the time of the search, and they were arrested. *Id.*

The defendants have now separately moved to suppress the tangible evidence discovered during the execution of the search warrant. ECF Nos. 49, 54, 58, 61. Judge Payson has recommended in her Report and Recommendation that this Court deny suppression of the

tangible evidence. ECF No. 74.

## DISCUSSION

Defendant Roosevelt Brooks has made specific objections to parts of the Report and Recommendation. ECF No. 80. The Court conducts a *de novo* review of those parts and "may accept, reject, or modify, in whole or in part, the findings or recommendations." *See* 28 U.S.C. § 636(b)(1)(C). By contrast, the Court simply adopts the parts of the Report and Recommendation to which Brooks has not specifically objected. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Notably, the other two defendants in this case, Terrence Lewis and Nathaniel Irvin, have not objected to the Report and Recommendation, so the Report and Recommendation is adopted as against them.

### 1. Fruit of the Poisonous Tree and Independent Source Doctrine

Brooks's primary argument in both his Motion to Suppress and his Objections is straightforward: Wengert's warrantless search on October 1, 2015 tainted the evidence recovered during the execution of the search warrant on October 15, 2015. ECF Nos. 54, 80. Per Brooks's Objections, "all of the evidence in the warrant application comes as a direct result of the observations that Wengert had during the October 1, 2015 search." ECF No. 80 at 2. Moreover, Brooks argues that "[t]here is no evidence to show that [police] would have applied for the search warrant of 24 Fern without the information that Wengert first gleaned from the warrantless search." *Id.* Accordingly, Brooks argues, the tangible evidence gathered during execution of the warrant is fruit of a poisonous tree and must be suppressed.

Judge Payson's view is that even given Wengert's unlawful[2] warrantless search, there

---

[2] For purposes of the pending motions, the government does not contest the unlawfulness of Wengert's warrantless search. ECF Nos. 63 at 7, 65 at 15 n.2. The government has offhandedly suggested in the briefing, however, that Wengert entered the house under exigent circumstances, specifically, to investigate a burglary in process. *Id.*

4

was an independent source for the evidence gathered on October 15, 2015. ECF No. 74 at 10–17. Under the independent source doctrine, if a search pursuant to a warrant is "genuinely independent" of an earlier, unlawful search, the evidence gathered during the warranted search will not be suppressed. *Murray v. United States*, 487 U.S. 533, 542 (1988). More specifically, for the government to show that evidence gathered during the execution of a search warrant is independent from a previous unlawful search, it must establish the following: "(1) the warrant . . . [is] supported by probable cause derived from sources independent of the illegal entry; and (2) the decision to seek the warrant [was] not be prompted by information gleaned from the illegal conduct." *United States v. Johnson*, 994 F.2d 980, 987 (2d Cir. 1993).

Brooks objects to Judge Payson finding in favor of the government on both prongs.

  *a. Whether Probable Cause Existed Independently From the Illegal Entry*

Judge Payson found that that the first prong of the independent source doctrine was satisfied, that is, she found that probable cause existed independently from the illegal entry. ECF No. 74 at 12–13. In doing so, she excised from the warrant application the evidence gleaned from Wengert's warrantless search. *Id.* at 11; *United States v. Reilly*, 76 F.3d 1271, 1282 (2d Cir.), *on reh'g*, 91 F.3d 331 (2d Cir. 1996) (observing that in determining whether the first prong is satisfied, "a reviewing court should excise the tainted evidence and determine whether the remaining, untainted evidence would provide a neutral magistrate with probable cause to issue a warrant.") (internal quotations, alterations, and citations omitted). She then found that even without those excised portions, probable cause for a search still existed. *Id.* at 13. Notably, probable cause for a search has been defined as a "a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 214 (1983).

Brooks's objection with regard to the first prong is relatively brief. He argues that "[t]he October 1 warrant-less search marked the earliest time in the warrant application that the RPD

5

was suspicious of anything at 24 Fern Street. There were mentions of *subsequent* controlled purchases at 24 Fern in the warrant application, but these occurred after Officer Wengert's search." ECF No. 80 at 2 (emphasis in original). "Thus," Brooks concludes, "all of the evidence in the warrant application comes as a direct result of the observations that Wengert had during the October 1, 2015 search." *Id.* In short, Brooks is arguing that because the warrantless search was the first time police were suspicious of 24 Fern Street, all evidence recovered thereafter came "as a direct result" of the warrantless search. *Id.*

First, the Court notes briefly that, contrary to Brooks's description of the facts above, the warrantless search did not "mark[] the earliest time" that police were suspicious of 24 Fern Street. Prior to searching the house, Wengert was, of course, already watching the house. During this time, he watched Lewis walking between 14 Fern Street and 24 Fern Street and, based on an affidavit filed by counsel for one of the defendants, saw Lewis depositing what turned out to be 63 bags of crack cocaine behind 14 Fern Street. ECF No. 49 at ¶ 7. Lewis was subsequently arrested, and only at that point did Wengert enter 24 Fern Street. *Id.* The key point here is that, based simply on the timeline of events, it is clear that the discovery of the 63 bags of crack cocaine did not derive from the warrantless search.

Second, as a general matter, Brooks's argument appears to rest on a faulty assumption. Brooks apparently assumes that simply because the unlawful search occurred *before* the discovery of certain evidence—for instance, evidence relating to the two controlled purchases—the unlawful search necessarily *caused* the discovery of that evidence. The entire point of the independent source doctrine is that, occasionally, an unlawful search at the outset does not cause the subsequent discovery of evidence. In those circumstances—where evidence is later discovered lawfully in a manner "independent" from the original unlawful search—the evidence is admissible *even though it was obtained after the unlawful search.*

6

The facts of this case underscore the error in Brooks's assumption that an unlawful search necessarily causes, and therefore taints, all subsequent discoveries of evidence. In short, while Wengert's warrantless search here was reprehensible, the fact is that it did not lead to much fruit for purposes of probable cause. Wengert walked into 24 Fern Street on October 1, 2015 and observed a video system and door barricades. These observations caused police to a request a special kind of warrant where they did not have to knock on the door. It is not apparent how these observations caused, however, police to discover the 63 bags of crack cocaine behind 14 Fern Street—once again, Wengert observed Defendant Lewis depositing these bags prior to even entering 24 Fern Street. ECF No. 49 at ¶ 7. It is also not apparent how these observations caused police to recover the 16 bags of heroin during two controlled purchases a few days afterwards—these purchases were likely conducted due to the substantial crack cocaine discovery.[3] In short, the primary pieces of evidence described in the search warrant application did not at all "derive[] from" Wengert's observations of a video system and barricades during the warrantless search. *Johnson*, 994 F.2d 980, 987 (2d Cir. 1993).

In sum, probable cause still existed in the warrant application even after excising the evidence gleaned during Wengert's warrantless search. Here, such an edited warrant application would still contain assertions regarding 63 bags crack cocaine found behind 14 Fern Street, a controlled purchase for six bags of heroin from 24 Fern Street, and another controlled purchase for ten bags of heroin from 24 Fern Street. Thus, even without Wengert's observations of the video system and door barricades, there was probable cause—that is, a "fair probability"—that evidence of a crime would be found at 24 Fern Street.

---

[3] The Court further observes that none of the defendants, including Brooks, have moved to suppress the evidence obtained from the two controlled purchases. It is unclear why, if the defendants truly believe that the warrantless search led to the two controlled purchases, they did not move to suppress the evidence obtained from these purchases.

7

For these reasons, the first prong of the independent source doctrine is satisfied.

*b.  Whether the Decision to Seek a Warrant was Prompted by the Illegal Entry*

The second prong of the independent source doctrine requires that the officers' decision to seek the warrant was not "prompted" by the unlawful search. *United States v. Bonczek*, 391 F. App'x 21, 24 (2d Cir. 2010). In short, this prong looks at the officers' motivations in seeking the warrant—was the warrantless search the catalyst for seeking the warrant? Judge Payson found that, because the warrantless search was simply part of a preexisting or "ongoing" drug investigation, officers would have sought the warrant even without the warrantless search and thus the prong was satisfied. ECF No. 74 at 14.

Brooks argues that the decision to seek the warrant was prompted by Wengert's search. In support of this argument, he first takes issue with Judge Payson relying on information outside of the warrant application in looking at the officers' motivations to seek the warrant. Here, the Court observes that Judge Payson indeed briefly referenced some assertions outside of the warrant application—found in both a defendant's and the government's motion papers—in determining that the drug investigation was "ongoing" at the time of the warrantless search. Specifically, she referenced that police received a tip at some point prior to October 1, 2015 about drug activity at 24 Fern Street (ECF No. 49 at ¶ 30) and that police had actually conducted another controlled drug purchase from 24 Fern Street on August 14, 2015 (ECF No. 63 at n.2). These assertions supported her ultimate conclusion that "the investigation of 24 Fern Street was well underway before, and was not prompted by, Wengert's unlawful entry." ECF No. 74 at 14.

In Brooks's words, his specific objection is that Judge Payson "went beyond the four corners of [the] warrant application" in referencing these two assertions, and thus she reached her conclusion on the basis of "factual evidence that is [not] before the Court." The Court responds to this objection with a brief observation at the outset. Brooks has not cited any

8

authority for the idea that the Court may not look to assertions outside the warrant application in determining the officers' motivations for seeking the warrant. That is telling. The first prong of the independent source doctrine is concerned, of course, with the precise information in the warrant application and whether some of that information needs to be excised. The second prong is concerned with, more broadly, the officers' motivations in seeking the warrant. It makes perfect sense that some of these motivations might exist outside of the warrant application—in applying for a warrant, officers are concerned with demonstrating probable cause to a neutral judge, not with setting forth their entire thought process in seeking the warrant.

In any event, even if this Court were to restrict itself to the warrant application in looking at the officers' motivations, it still agrees with Judge Payson that the investigation was "well underway" before Wengert's unlawful entry. Once again, Wengert was already surveilling 24 Fern Street before the warrantless entry, and he had already observed Defendant Lewis walking between 14 Fern Street and 24 Fern Street during this surveillance. Independently from the illegal entry, Wengert later recovered 63 bags of crack cocaine from behind 14 Fern Street. On these facts, it is apparent that references to information outside the warrant application were, indeed, simply references; they were not at all necessary to the finding that the investigation was underway before the illegal search.

Finally, Brooks argues that 63 bags of crack cocaine discovered on October 1, 2015 could not possibly have factored into the officers' decision to seek the search warrant for 24 Fern Street—this is because this crack cocaine was discovered behind *14 Fern Street* as opposed *to 24 Fern Street*. Thus, since "the circumstances of 14 Fern had nothing to do with 24 Fern," the real reason police sought the warrant must have been Wengert's warrantless entry. ECF No. 80 at 3.

The problem with this argument is that the circumstances of 14 Fern Street actually have quite a bit to do with 24 Fern Street. The two houses are next to each other and, based on the

9

warrant application, Lewis was walking from 14 Fern Street to 24 Fern Street on October 1, 2015. ECF No. 49-2 at 5. The warrant application is also clear that 14 Fern Street is a vacant house. *Id.* Thus, the clear inference to be drawn from the application is that Lewis does not live at 14 Fern Street, yet he clearly has some connection to both 14 Fern Street and 24 Fern Street. Moreover, a possible question based on the application is whether Lewis resides at 24 Fern Street yet uses 14 Fern Street for some other reason. In any event, it is Lewis—one of the defendants in this case—who links the two houses together, and accordingly, links the crack cocaine found behind 14 Fern Street to 24 Fern Street. For this reason, the Court does not accept the argument that the discovery of crack cocaine behind 14 Fern Street could not have factored into police's decision to seek the warrant for 24 Fern Street.

In sum, the second prong of the independent source doctrine is satisfied. The warrantless entry did not prompt the officers to seek the search warrant.

### 2. No-Knock Authorization

Brooks next makes a brief objection with regard to the no-knock authorization for the warrant. Judge Payson found that even without Wengert's observations of the video system and barricades during his warrantless search, the application still contained information sufficient to justify no-knock authorization. ECF No. 74 at 17. Brooks argues, on the contrary, that "if Wengert's October 1, 2015 search were excised from the search warrant, there would not be enough information for a no-knock warrant to be issued." ECF No. 80 at 4.

For purposes of suppression of evidence, this objection is irrelevant. Violations of the knock-and-announce rule do not result in the suppression of evidence. *See Hudson v. Michigan*, 547 U.S. 586, 594 (2006). Thus, the Court declines to respond to Brooks's objection regarding no-knock authorization for the warrant.

### 3. Standing, Overbreadth of Warrant, and Good-Faith Reliance on Warrant

Finally, the Court briefly addresses the parts of the Report and Recommendation to which no party has objected. Specifically, the government has not objected to Judge Payson's finding that all three defendants possessed standing to challenge the search warrant for the house at 24 Fern Street. ECF No. 74 at 8. Additionally, none of the defendants have objected to Judge Payson's finding that the warrant was not overbroad (*id.* at 18–21) and that the officers who executed the search warrant relied on the warrant in good faith (*id.* at 21–22).

The Court adopts these parts of the Report and Recommendation. *See Arn*, 474 U.S. at 150. Thus, there is actually a separate reason why suppression of evidence is not justified in this case: Under the good-faith exception to the exclusionary rule, even if the independent source doctrine did not save the legitimacy of the warrant, the heroin, guns, and ammunition seized during the warrant's execution would still not be suppressed because the officers relied on the warrant in good faith. *United States v. Leon*, 468 U.S. 897, 918–23 (1984).

## CONCLUSION

For the reasons above, the Report and Recommendation issued on May 2, 2016 (ECF No. 74) is ADOPTED IN ITS ENTIRETY. In sum, the motions to suppress by the three defendants in this case (ECF Nos. 49, 54, 58, 61) are DENIED.

IT IS SO ORDERED.

DATED:   July 7, 2016
         Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court